[No. C032811. Third Dist. Aug. 14, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
LUIS ALONSO MOLINA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of the FACTUAL AND PROCEDURAL BACKGROUND and part I. of the DISCUSSION.

## Counsel

David L. Saine, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Stan Cross and Robert M. Morgester, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—Defendant Luis Alonso Molina appeals from the judgment and sentence imposed following his conviction for driving under the influence of alcohol (Veh. Code, § 23152, subd. (a))[1] and driving with a prohibited blood-alcohol level of 0.08 percent or more (§ 23152, subd. (b)). Defendant contends the trial court erred in (1) refusing to instruct the jury on the defense of necessity, and (2) instructing the jury with CALJIC No. 17.41.1 (juror misconduct), which assertedly impinged upon defendant's Sixth and Fourteenth Amendment rights to have a unanimous jury and a jury free to use its power of nullification.

In the unpublished portion of the opinion, we shall conclude the trial court did not err in refusing the necessity instruction. In the published portion of the opinion, we shall conclude that, assuming for the sake of argument that CALJIC No. 17.41.1 is defective, reversal is not required if the giving of the instruction was harmless beyond a reasonable doubt, as it was in the case before us. Accordingly, we shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

### I.  *Necessity Defense*\*

. . . . . . . . . . . . . . . . . . . . . . . . .

### II.  *CALJIC No. 17.41.1*

The trial court instructed the jury with CALJIC No. 17.41.1, as follows: "The integrity of a trial requires that jurors, at all times during their deliberations conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an

---

[1]Undesignated statutory references are to the Vehicle Code.
\*See footnote, *ante*, page 1329.

intention to disregard the law or to decide the case based on penalty or punishment or any other improper basis, it is the obligation of the other jurors to immediately advise the Court of that situation."

Defendant contends the instruction violated his federal constitutional rights and the erroneous giving of the instruction constitutes per se reversible error.

The California Supreme Court currently has under review the issue of whether CALJIC No. 17.41.1 violates a defendant's constitutional rights regarding jury trial. (E.g., *People v. Engelman* (2000) 77 Cal.App.4th 1297 [92 Cal.Rptr.2d 416], review granted Apr. 26, 2000, S086462, further action deferred pending disposition in *People v. Metters*, 61 Cal.App.4th 1489 [72 Cal.Rptr.2d 294], review granted June 10, 1998, S069442; and *People v. Cleveland*, review granted June 30, 1999, S078537.)

We shall assume for the sake of argument that CALJIC No. 17.41.1 should not have been given. We shall conclude the error was not reversible per se but was subject to harmless error analysis. We shall further assume applicability of the standard most favorable to defendant, i.e., the *Chapman* standard (*Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]), and conclude reversal is not required in this case because any error in giving the instruction was harmless beyond a reasonable doubt.[5]

Any error in giving the instruction was not reversible per se under federal constitutional analysis. "[A]s a general rule, . . . 'if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis. The thrust of the many constitutional rules governing the conduct of criminal trials is to ensure that those trials lead to fair and correct judgments. Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed.' [Citation.]" (*People v. Flood* (1998) 18 Cal.4th 470, 492 [76 Cal.Rptr.2d 180, 957 P.2d 869], citing *Rose v. Clark* (1986) 478 U.S. 570, 579 [106 S.Ct. 3101, 3106, 92 L.Ed.2d 460].)

The California Supreme Court in *Flood* went on to summarize United States Supreme Court development of the law in this area, as follows:

[5]The People advocate the lesser standard of reasonable likelihood of a more favorable result. We note federal courts have applied the *Chapman* standard where the only possible effect of an erroneous jury instruction was to minimize the possibility of jury nullification. (E.g., *United States ex rel. Ross v. Franzen* (7th Cir. 1982) 688 F.2d 1181, 1185-1187 [discussing harmless error when trial court refuses to allow "not guilty" verdict because defendant admits criminal acts].)

■ "In *Arizona* v. *Fulminante* [(1991)] 499 U.S. 279 [111 S.Ct. 1246, 113 L.Ed.2d 302], a decision holding that the erroneous admission of a coerced confession is not reversible per se, the court elaborated upon harmless error analysis by distinguishing between 'trial errors,' which are subject to the general rule that a constitutional error does not require automatic reversal, and 'structural' errors, which 'defy analysis by harmless-error standards' and require reversal without regard to the strength of the evidence or other circumstances. [Citation.] *Fulminante* characterized trial errors as those that occur 'during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether [the error] was harmless beyond a reasonable doubt.' [Citation.] Structural errors, on the other hand, are 'structural defects in the constitution of the trial mechanism . . . affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' [Citation.] The court noted examples of trial errors, including erroneous jury instructions [citation], as well as structural errors, which include the total deprivation of the right to counsel at trial, a biased judge, unlawful exclusion of members of the defendant's race from a grand jury, denial of the right to self-representation at trial, and denial of the right to a public trial. [Citation.] With regard to such structural errors, *Fulminante* explained: ' "Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." ' [Citation.]" (*People v. Flood, supra*, 18 Cal.4th at p. 493.)

As examples of structural error, the United States Supreme Court has noted by way of example that "[w]here th[e] right [to a jury trial] is altogether denied, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judged the defendant guilty." (*Rose v. Clark, supra*, 478 U.S. at p. 578 [106 S.Ct. at p. 3106].) Where demonstration of prejudice is " 'a practical impossibility, prejudice must necessarily be implied.' " (*Waller v. Georgia* (1984) 467 U.S. 39, 49, fn. 9 [104 S.Ct. 2210, 2217, 81 L.Ed.2d 31] [denial of right to public trial].) "Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 177, fn. 8 [104 S.Ct. 944, 950, 79 L.Ed.2d 122].)

*People v. Flood, supra,* 18 Cal.4th 470, went on to observe "the United States Supreme Court made clear that at least one type of instructional error may amount to a structural defect in the trial mechanism that requires

reversal regardless of the strength of the evidence of the defendant's guilt. In *Sullivan* v. *Louisiana* [(1993)] 508 U.S. 275 [113 S.Ct. 2078, 124 L.Ed.2d 182], the trial court gave a constitutionally deficient reasonable doubt instruction. In explaining why *Chapman* harmless error analysis cannot be applied to such an error, *Sullivan* stated: 'Harmless-error review looks . . . to the basis on which "the jury *actually rested* its verdict." [Citation.] The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee.' [Citation.] Because a constitutionally defective reasonable doubt instruction renders it impossible for the jury to return a verdict of guilty beyond a reasonable doubt, '[t]here is no *object*, so to speak, upon which harmless-error scrutiny can operate. The most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt—not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough. [Citation.] The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty.' [Citation.]" (*Flood, supra,* 18 Cal.4th at p. 494, original italics, citing *Sullivan v. Louisiana, supra,* 508 U.S. 275, 280-281 [113 S.Ct. 2078, 2082, 124 L.Ed.2d 182].) The California Supreme Court has interpreted United States Supreme Court authority as indicating "instructional errors—whether misdescriptions, omissions, or presumptions—as a general matter fall within the broad category of trial errors subject to *Chapman* review on direct appeal." (*Flood, supra,* 18 Cal.4th at p. 499.)

*Flood* involved a prosecution for evading peace officers, where the trial court did not instruct the jurors to decide whether the police were peace officers but instead informed the jurors that the police who chased the defendant were peace officers. The California Supreme Court held that, although the trial court committed constitutional error in violation of the defendant's due process right to have the jury decide each element of the offense, the error was not "structural error," hence, not reversible per se, but rather was subject to harmless error analysis under the *Chapman* standard. (*People v. Flood, supra,* 18 Cal.4th at pp. 502-503.)

The United States Supreme Court has endorsed a categorical approach to structural errors, i.e., a particular error is either structural or it is not, regardless of the facts of the particular case. (*Neder v. United States* (1999)

527 U.S. 1 [119 S.Ct. 1827, 144 L.Ed.2d 35, 50] [in criminal tax fraud case, trial court's refusal to submit materiality issue to jury was not structural error].)

██ Here, defendant argues the asserted error in instructing the jury with CALJIC No. 17.41.1 is error of federal constitutional magnitude which directly implicated his Sixth Amendment right to trial by jury and Four-teenth Amendment right to a fair trial. He argues jury nullification is implicit in his Sixth Amendment rights. He argues CALJIC No. 17.41.1 invites jurors in the majority to coerce holdout jurors into agreeing with the majority and intrudes into the deliberative process. He also mentions the California Constitution but provides no separate analysis.

Defendant submits the error is one which defies assessment of its actual impact on the jury, hence is "structural error" which is reversible per se, without regard to the question of prejudice. Defendant alternatively argues that if the error is subject to harmless error analysis, the error requires reversal because it was not harmless beyond a reasonable doubt.

However, even assuming for the sake of argument that the giving of CALJIC No. 17.41.1 constitutes constitutional error, it is not "structural error" and does not require reversal per se. All the instruction does is to require jurors to inform the court of juror misconduct. It does not " 'affect[] the framework within which the trial proceeds,' " nor does it "necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." (*Neder v. United States, supra,* 527 U.S. at pp. 8-9 [119 S.Ct. at pp. 1833-1834, 144 L.Ed.2d at pp. 46-47], italics omitted; see also *People v. Flood, supra,* 18 Cal.4th at p. 493.) We do not agree that the instruction is likely to be coercive. Absent misconduct by the jury, expressly identified in the instruction, the instruction is not likely to enter into jury deliberations at all. In the vast majority of cases, there is no jury misconduct. We do not see how an instruction that is not likely to come into play in most cases can constitute structural error requiring the reversal of every case in which it is given. We think that such a result would be, frankly, absurd.

Accordingly, we conclude any error in instructing the jury with CALJIC No. 17.41.1 is not reversible per se, but rather is subject to harmless error analysis.

Assuming applicability of the *Chapman* standard, any error in this case does not require reversal because it was harmless beyond a reasonable doubt. In this case, the jury reached a verdict in less than an hour, with no

indication of deadlock or holdout jurors. Thus, the record reflects the jury began deliberations after lunch on April 14, 1999, around 1:30 p.m., and notified the court at 2:21 p.m. that it had reached a verdict. The jury did not communicate with the court during its deliberations. We will not infer that the jury instruction had any impact prejudicing defendant. We reject defendant's speculative assumption that the instruction had a chilling effect on the jurors' deliberations, inhibiting the kind of free expression and interaction among jurors that is so important to the deliberative process. There is no warrant for that view on this record.

We conclude there was no reversible error in this case.

DISPOSITION

The judgment is affirmed.

Morrison, J., and Callahan, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 29, 2000.