[Crim. Nos. 6219, 6218. Second Dist., Div. One. Feb. 9, 1959.]

THE PEOPLE, Respondent, v. EDWARD M. THOMPSON, Appellant.

[Two Cases.]

Robert P. Dockeray for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

FOURT, J.—Two appeals are consolidated in this cause. The first, hereinafter referred to as cause one, involved the defendant in two charges of violating the provisions of section 288, Penal Code, in that he did, on June 26, 1949, commit a lewd and lascivious act upon the bodies of two sisters (twins) aged 7 years. He was, in that case, charged with three prior convictions, as follows: (1) that in the State of Maine he was convicted of the crime of indecent liberties, and on September 10, 1936, was sentenced to serve a term of imprisonment in the state prison therefor; (2) that in the State of Montana he was convicted of the crime of lewd and lascivious acts upon a child, and was, on April 3, 1940, sentenced to a term in the state prison; (3) that in the State of Washington he was convicted of the crime of indecent liberties with a female child, and on June 1, 1942, was sentenced to a term in the state prison. The defendant pleaded guilty to count I of the charges in that information, and admitted all three prior convictions. Count II was subsequently ordered off calendar.

The court, after a hearing, found the defendant to be a sexual psychopath and ordered him committed as such to a state hospital. In the latter part of the same year the judge who committed the defendant received a letter from the superintendent of the state hospital where the defendant was confined. The essence of that communication was that the defendant was on parole from the Washington state prison and the Washington state authorities would take the defendant back if he could be released, and further that the defendant would not benefit by further care at the Patton hospital. The defendant was returned to court and the proceedings which followed (sentencing the defendant to the California state prison at San Quentin) were not (according to this court) in conformity with the law and the judgment was reversed and further proceedings were ordered. (*People* v. *Thompson* (1951), 102 Cal.App.2d 183 [227 P.2d 272].) The reversal had nothing to do with the matter of his guilty plea and the admission of the priors.

The defendant was thereafter ordered recommitted to Patton state hospital, where he apparently was confined as a sexual psychopath. The minutes of the court of September

20, 1954, recite that on that day in open court, the judge found the defendant to be no longer a sexual psychopath, all of the prior convictions were stricken in the interest of justice, and the criminal proceedings were reinstated. The defendant was then sentenced to the state prison on count I, and the execution of the sentence was suspended and probation was granted. Count II was then dismissed. The defendant was thereupon released into society.

The judgment in the record before us does not conform to the minutes above mentioned, but set forth that the defendant pleaded guilty to the charge as set forth in count I, that he admitted the prior convictions and served terms therefor in the state prison mentioned in each instance. Nothing is set forth in regard to the striking of any prior convictions.

If the defendant was cured of his sex psychopathy, as the judge apparently believed he was, it was not for long, because on November 13, 1954, the defendant committed the offense which will hereafter be referred to as cause II.

In cause II, the defendant was charged in an information with a violation of section 647a, subdivision 1, Penal Code, in that he did annoy and molest a female child of the age of 5 years, and that before the commission of such offense he had been convicted of the crime of violating section 288, Penal Code, and judgment was pronounced thereon on about August 27, 1949, and further, he was charged with the other prior convictions heretofore mentioned. The defendant entered his plea of not guilty and denied the prior convictions. By stipulation, the prosecution's case was submitted on the transcript of the testimony taken at the preliminary hearing. Complete and proper certified copies of the former prison records, together with pictures and the fingerprints of the defendant, were submitted. The defendant was found guilty as charged, and each prior conviction was found to be true. Sexual psychopathy proceedings were then instituted and the defendant was found to be a probable sex psychopath. Criminal proceedings were adjourned and the defendant was sent to Atascadero state hospital for a period of 90 days' observation and diagnosis. Within the 90-day period the court received reports from the superintendent of the Atascadero state hospital to the effect that the defendant was ''a sexual psychopath and could benefit from treatment.'' The defendant was then found to be a sexual psychopath and was committed to such facility for an indeterminate period.

In December, 1957, a printed form report of the Superintendent and Medical Director of Atascadero state hospital was filed in court wherein it was set forth that the defendant would not benefit by further care and treatment in the hospital, and that he was not a menace to the health and safety of others. Attached to the report and made a part of it is the statement that, out of the last 37 years the defendant had spent about 20 years in prisons and hospital, and that the diagnosis was, among other things, "sociopathic personality disturbance."

On January 16, 1958, the defendant's application for probation was denied, the prior convictions were stricken "in the interests of justice" and he was sentenced to the state prison.

At the same time, in cause one, the judge ordered the probation theretofore granted revoked, and sentenced the defendant to the state prison, striking the prior convictions "in the interests of justice." The two terms were to run concurrently.

These appeals followed. The defendant concedes that if the appeal from cause two fails, there is no ground for reversal of the judgment in cause one.

 A résumé of the facts in cause two follows: On November 13, 1954, Mrs. Mary L. Silva and her 5-year-old daughter, Nancy, went to a motion picture theatre located on Hill Street in Los Angeles. The mother was seated next to the aisle and her daughter was seated next to her to her left. The theatre was nearly empty. About one-half hour after the mother and daughter were seated, the defendant sat down in the seat next to the child. The child was sitting with her hands placed on the seat next to her body. The defendant was sitting with his right arm on the arm rest that was between his chair and the child's chair, and he was raising and lowering his arm from the elbow while it was on the arm rest. While so moving his arm the defendant looked at the child's face. Also, while moving his arm, he more than once touched the child's hand though her hand was resting as heretofore stated. Mrs. Silva, the mother, then observed the defendant lift up the child's dress and expose a part of the child's leg, and the mother struck the defendant's arm and said, "You stop that right now." The defendant replied, "Give me a break, lady," and some other woman in the theatre said, "Call the cops." The defendant then ran out and was caught by two sailors. Later at the police station, the defendant, in

the presence of two officers, freely and voluntarily stated that he went into the theatre and that "he knew when he saw her he was going to sit down next to her." He also said, "there was some inner impulse that made him do it." Also that, "he put his hand just below her knee," that he "held her hand for a few minutes and that he put his hand above her knee." He then told the officers of some of his previous troubles. The defendant wrote out, in his own handwriting, a statement wherein he stated, in effect, that he had "molested" the child in the theatre, that he had "fondled" her "hand and her leg."

The defendant did not introduce any evidence by way of defense or otherwise.

The then attorney for the defendant announced at the conclusion of the prosecution's case, "Your Honor, there is no defense to this . . . ." The court found the defendant guilty as charged and found all three prior convictions to be true.

The defendant was permitted to make an application for probation. The court appointed two psychiatrists to examine the defendant. The court also ordered that the violation of probation in cause one would be heard at the time of hearing the application for probation in cause two. At the time of the sentencing of the defendant, his counsel argued to the court that because of his (counsel's) faith in psychiatrists and his faith in Thompson, probation should be granted; that if the defendant went to the penitentiary "the Board's (Adult Authority) hands are completely tied for years because of the prior felony convictions." The judge then expressed the view, which was correct, that the defendant was ineligible for probation because of the prior convictions. The court also pointed out that the defendant had served three terms in three separate prisons for sex offenses, and that he had a number of other sex charges against him going back almost 30 years. The court then, at the request of counsel for the defendant, struck the prior convictions to the end that the Adult Authority "will have ample latitude to determine the length of stay." In other words, the judge sentenced the defendant as a first offender, with the result that he will be required to serve "not less than one year" (Pen. Code, § 647a, subd. (1)), instead of being required to spend the minimum time in prison as required by statute for those who repeatedly commit sex offenses against small children.

The defendant now contends, with reference to cause two, that (1) the evidence was insufficient; (2) the court indicated a lack of impartiality, and (3) it was error to hold that the

child in question was a competent witness. He further states that if he fails in his claims as to count two, that then and in such event cause one necessarily falls.

Section 647a, subdivision (1), provides as follows:

"(1) Every person who annoys or molests any child under the age of 18 is a vagrant and is punishable upon first conviction by a fine not exceeding five hundred dollars ($500) or by imprisonment in the county jail for not exceeding six months or by both such fine and imprisonment and is punishable upon the second and each subsequent conviction or upon the first conviction after a previous conviction under Section 288 of this code by imprisonment in the state prison for not less than one year."

A careful reading of the entire transcript in these cases leads us to the conclusion that the contentions of the defendant are devoid of merit.

In *People* v. *Pallares*, 112 Cal.App.2d Supp. 895, in speaking of the statute in question, it was said at page 900 [246 P.2d 173]:

"The object of the enactment of the code section was the protection of children from interference by sexual offenders, and the apprehension, segregation and punishment of the latter. It is common knowledge that the subject of sex offenders, and particularly the protection of the young from improper advances, has in recent years engaged the close attention of the Legislature and of the general body of the citizens of this state. The purpose of the legislation is indicated clearly by reference in the section to section 288 of the Penal Code, by the increase of penalties for second offenders, . . ."

And, with reference to the same statute, the Pallares case further states (at pp. 901-902):

"When the words annoy or molest are used in reference to offenses against children, there is a connotation of abnormal sexual motivation on the part of the offender. Although no specific intent is prescribed as an element of this particular offense, a reading of the section as a whole in the light of the evident purpose of this and similar legislation enacted in this state indicates that the acts forbidden are those motivated by an unnatural or abnormal sexual interest or intent with respect to children. It should be noted further that the section must be construed reasonably as setting up an objective test for annoyance or molestation; a childish and wholly unreasonable subjective annoyance, arising, for example, from a child's

dislike for proper correction by a teacher, is not covered by the section. The annoyance or molestation which is forbidden is in no sense a purely subjective state on the part of the child. The objectionable acts of a defendant constitute the annoyance or molestation contemplated by the statute. (See *State* v. *Chaplinsky*, 91 N.H. 310 [18 A.2d 754].)''

It is our belief that the acts performed by the defendant were lewd and obscene under the circumstances and would irritate, disturb and annoy a normal person. In *People* v. *McNair*, 130 Cal.App.2d 696, at page 698 [279 P.2d 800], the court set forth as follows: ''If the conduct of a defendant is so lewd or obscene that the normal person would unhesitantly be irritated by it, such conduct would 'annoy or molest' within the purview of section 647a, subdivision (1), Penal Code.''

The acts were obviously not accidental, otherwise the defendant would have taken the witness stand and so testified, or his counsel would have appropriately argued the matter.

The defendant now argues that there was no actual touching of the child's body, and therefore the conduct was not sufficient to constitute the offense under the section in question. First, the evidence does not sustain the defendant's position, and secondly, even if it did, the touching of the body is not necessarily required. (See *People* v. *McNair, supra.*)

The defendant relies heavily upon the case of *People* v. *Carskaddon*, 49 Cal.2d 423 [318 P.2d 4]. However, the facts of that case are far from similar to the facts of the present case.

Considering next the defendant's contention that the trial judge was not impartial, and had prejudged the case. Defendant states that the judge said:

''THE COURT: If the mother hadn't interceded when she did, I don't know how far he would have gone. That was about as much as she could stand, and she hauled off and hit him, which I can understand.''

The defendant rested his case and the defendant's counsel said, ''there is no additional evidence,'' and then later said in answer to the comment of the judge above set forth, ''That is probably true, your Honor, . . .'' The statement of the judge was made *after* both parties had rested their case, and *after* the defendant's counsel had said, ''Your Honor there is no defense to this. . . .''

The case of *People* v. *Barquera*, 154 Cal.App.2d 513 [316 P.2d 641], cited by the defendant, is not in point, as in that case the trial judge expressed the belief that the defendant had no defense *before* the defense was presented.

We find no evidence of the trial judge's being partial or prejudging this case.

■ Considering the defendant's last contention that the court erred in holding that the child of 5 years was a competent witness. The trial judge did say, "I have a serious question as to her competency to testify," but that statement, in and of itself, does not mean that the judge had any doubt of the guilt of the defendant. On stipulation, the case was submitted on the transcript of the testimony taken at the preliminary hearing. The child testified at the preliminary hearing. The judge at that time had an opportunity to observe the child, and he questioned her and permitted her to testify, and he determined that she was a competent witness. He also said of her: "I think this little girl is exceptionally bright and intelligent for her age. She doesn't come forth with the usual answers as to what happens when you tell stories, but her answers indicated, I would say, a better than average comprehension of what she is asked for her age. I believe she is qualified to tell what may have occurred."

We believe the trial judge was proper in his rulings to the effect that the testimony of the child was competent. (See *People* v. *Trolinder*, 121 Cal.App.2d 819 [264 P.2d 601].)

Even if we were to assume that the child was incompetent to testify, the admission of such testimony under the circumstances did not constitute prejudicial error and there was sufficient other evidence to uphold the judgment. The mother's testimony and the defendant's confession were enough, in and of themselves, to convict the defendant.

◦ The defendant has not raised the question, but we presume that when the judge, at the time of sentencing, said, "The Court will strike the priors in the interest of justice," that he meant all of the prior convictions excepting the prior conviction charged in the information referred to herein as cause one. Otherwise the anomolous situation presents itself of having the defendant guilty of only a misdemeanor, as the section (647a, subd. (1)) itself provides, in effect, that the annoying and molesting of a child is a misdemeanor, excepting upon the second conviction and subsequent convictions thereof, or upon the first conviction after a previous conviction under section 288 of the Penal Code.

We assume that what the court meant by striking the priors was to strike only the Maine, Montana and Washington convictions, to the end that the defendant could serve the sen-

736

tences imposed in cause one and cause two in this state concurrently.

The judgment in case Criminal Number 6218, referred to herein as cause one, is affirmed.

The judgment in case Criminal Number 6219, referred to herein as cause two, is affirmed.

White, P. J., and Lillie, J., concurred.