113 Cal.Rptr.2d 229 (2002)
93 Cal.App.4th 481
The PEOPLE, Plaintiff and Respondent,
v.
Jerry Anthony MARTINEZ, Defendant and Appellant.
No. H021773.
Court of Appeal, Sixth District.
October 30, 2001.
Review Granted January 23, 2002.
*232 Jan Stiglitz, Attorney under appointment by the Court of Appeal for Defendant and Appellant.
Bill Lockyer Attorney General, David P. Druliner, Chief Assistant, Ronald A. Bass, Senior Assistant Attorney General, Laurence K. Sullivan, Supervising Deputy Attorney General, Seth K. Schalit, Deputy Attorney General, Attorneys for Plaintiff and Respondent.
WUNDERLICH, J.

I. Statement of the Case

A jury convicted defendant Jerry Anthony Martinez of soliciting another person to commit a violation of Penal Code section 288[1] (§ 653f, subd. (c)) and annoying or molesting a minor and having a prior conviction under section 288 (§ 647.6, subd. (c)(2)). Thereafter, the court further found that defendant had two prior felony convictions that qualified as "strikes" under the "Three Strikes" law. (§§ 667, subds.(b)-(i); 1170.12.) At sentencing, the court imposed indeterminate terms of 25 years to life for both convictions but stayed the term for annoying and molesting under section 654. Defendant appeals from the judgment. He claims his convictions must be reversed because (1) his conduct did not constitute criminal solicitation *233 and (2) the statutory proscription against annoying or molesting a minor is facially overbroad and unconstitutional. Defendant further claims the trial court erred in admitting evidence of his prior convictions for molestation under Evidence Code section 1108 because (1) that statute is unconstitutional and (2) the evidence was more prejudicial than probative. Last, he claims the court erring in giving CALJIC No. 17.41.1 (1998 new) (6th ed.1996), which requires jurors to report misconduct.
We modify the judgment, striking defendant's conviction for solicitation and vacating the stay on his conviction for annoying and molesting a minor. We further modify the judgment to reflect that (1) presentence custody credit previously awarded against the sentence for solicitation shall now apply against the sentence for annoying and molesting and (2) any credit earned by defendant serving the sentence for solicitation shall be applicable to the sentence for annoying and molesting. We affirm the judgment as modified.

II. Facts

On January 4, 2000, a 14 year old girl, hereafter referred to as the victim, walked past the Franklin Mall on her way home from school. She saw defendant, whom she had met a couple of days before, and said hello. He asked if she wanted to drink beer with him. She agreed, and they sat on a bench and drank from cans concealed in paper bags. He asked her how old she was, where she went to school, and what grade she was in. She told him. He informed her that he had just gotten off parole. She asked what he was on parole for, he said it was for "sex, drugs, and rock and roll."
Defendant then asked the victim if she wanted to make some money. She asked how, he offered her $20 for five minutes of oral sex. When she declined, he offered $40 for 10 minutes. Again she declined. He increased the offer to $60 for 15 minutes, but she told him she would not do it no matter how much money he offered. She then finished her beer, talked with defendant for a little longer, and left. She testified that defendant's offers angered her, and although she was not afraid, she felt degraded.
John Gavidia, a maintenance worker at the mall, testified that he saw defendant talking to a girl at the mall. He did not recognize her but had seen defendant before. The two were smoking cigarettes and drinking from paper bags. He heard the girl say something like, "$20, $40, that's a lot of money." He immediately called the police.
At trial, the People introduced documentary evidence that defendant had two prior convictions for lewd conduct with a minor. (See § 288.)

III. The Conviction for Solicitation

Defendant was convicted of violating section 653f, subdivision (c), which provides, in relevant part, "Every person who, with the intent that the crime be committed, solicits another to commit rape by force or violence, sodomy by force or violence, oral copulation by force or violence, or any violation of Section 264.1, 288[2], or 289, shall be punished by imprisonment in the state prison for two, three, or four years."
Defendant contends that offering the victim money for oral sex did not *234 violate the statute because he did not ask her to commit one of the specified crimes. Indeed, he notes that even if she had complied with his offer, she would not have violated section 288. (See People v. Slaughter (1941) 45 Cal.App.2d 724, 725, 115 P.2d 30 [because minor victim of lewd act not criminally liable, accomplice instruction not required]; cf. People v. Tobias (2001) 25 Cal.4th 327, 332, 106 Cal. Rptr.2d 80, 21 P.3d 758 [same re minor participant in incest with adult].) We agree.
To resolve defendant's claim, we must construe section 653f, subdivision (e). In doing so, our fundamental goal is to "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (People v. Jenkins (1995) 10 Cal.4th 234, 246, 40 Cal.Rptr.2d 903, 893 P.2d 1224.) To find intent, we turn to the words of the statute. Viewing them in context and in light of the nature and obvious purpose of the statute, we give the words their plain, everyday, commonsense meaning. If we find no ambiguity or uncertainty, we simply presume the Legislature meant what it said. Further inquiry into legislative intent is unnecessary. However, if we find the statutory language susceptible to more than one reasonable interpretation, we may then turn to extrinsic indicia of intent, such as legislative history, public policy, and the statutory scheme of which the statute is a part. Where the language of a penal statute is ambiguous, we give the defendant the benefit of a doubt and interpret it as favorably to him or her as is reasonably possible, being careful, however, to avoid interpretations that would frustrate the purpose of a statute, render it nugatory, or lead to an absurd result. (People v. Murphy, supra, 25 Cal.4th at p. 142, 105 Cal.Rptr.2d 387, 19 P.3d 1129; People v. Superior Court (Zamudio) (2000) 23 Cal.4th 183, 192, 96 Cal.Rptr.2d 463, 999 P.2d 686; People v. Alvarado (2001) 87 Cal.App.4th 178, 185-186, 104 Cal.Rptr.2d 624; People v. Rackley (1995) 33 Cal.App.4th 1659, 1665-1666, 40 Cal. Rptr.2d 49.)
In Benson v. Superior Court (1962) 57 Cal.2d 240, 243, 18 Cal.Rptr. 516, 368 P.2d 116, the court explained that the purpose of section 653f was not just to prevent the commission of the specified crimes but also to protect otherwise innocent people from exposure to inducements to commit crimes. As the court in People v. Miley (1984) 158 Cal.App.3d 25, 34, 204 Cal.Rptr. 347, observed concerning criminal solicitation, "the harm is the asking...." (Original italics.)
We turn to the language of section 653f, subdivision (c), and in particular to the clause "who, with the intent that the crime be committed, solicits another to commit [a specified offense]." We begin with the word "solicit." Its plain and ordinary meaning is to ask another person to do a particular thing. (See Webster's 3d New Internat. Diet. (1993) p. 2169.) As the California Supreme Court explained, "`Solicit' is defined as: `To ask for with earnestness, to make petition to, to endeavor to obtain, to awake or excite to action, to appeal to, or to invite.' [Citation.] `It implies personal petition and importunity addressed to a particular individual to do some particular thing, ...' [Citation.]" (Aetna Bldg. Maintenance Co. v. West (1952) 39 Cal.2d 198, 203-204, 246 P.2d 11, italics omitted; accord, People v. Superior Court (Hartway) (1977) 19 Cal.3d 338, 345-346, 138 Cal.Rptr. 66, 562 P.2d 1315.) The plain and ordinary meaning of "to commit" as it relates to criminal activity is to act in violation of the law and thereby become subject to punishment as *235 a perpetrator. (See § 27.)[3] Last, the phrase "with the intent that the crime be committed" clearly indicates that the solicitor need only intend that someone commit one of the target offenses; the solicitor need not intend to personally commit it or even aid and abet its commission by another person.
Read as a whole, the entire clause "who, with the intent that the crime be committed, solicits another to commit [one of the specified offenses]" simply and directly means that the solicitee must be asked to violate one the specified crimes. When we consider the statutory language in light of its purpose to prevent criminal inducements, we find that it unambiguously proscribes asking another person to become a perpetrator of one of the specified offenses with the intent that the offense be committed. Accordingly, we presume the Legislature intended to convey this meaning. Indeed, this view of the statute reflects how the crime of solicitation is generally understood. (See generally 1 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Elements, §§ 31-32, pp. 237-239; 2 LaFave & Scott, Substantive Criminal Law (1986) § 6.1, pp. 3-8; 81 C.J.S. (1977) Solicit, p. 676; 21 Am.Jur.2d (1998) Criminal Law § 181, pp. 257-258; Solicitation to Commit a Crime (1957) 51 A.L.R.2d 953, 955-956; Criminal Attempt and Related Problems, 2 U.C.L.A. Law. Rev. 319, 349; e.g., Model Pen.Code, § 5.02(1)[4].) Thus, in People v. Gordon (1975) 47 Cal.App.3d 465, 472, 120 Cal. Rptr. 840, the court explained that "[s]olicitation consists of the asking of another to commit one of the specified crimes with intent that the crime be committed." For example, in People v. Bell (1988) 201 Cal. App.3d 1396, 248 Cal.Rptr. 57, the defendant asked an undercover police officer to procure a minor on whom he intended to commit lewd acts. On appeal from his conviction, the defendant argued that since he did not ask the undercover officer to commit these lewd acts, he was not guilty of solicitation. In rejecting this claim, the court explained that if the officer had procured the minor, the officer would have been liable for the lewd acts as an aider and abettor. Thus, the defendant violated the statute because he solicited the officer to commit one of the specified offenses. (Id. at p. 1399, 248 Cal. Rptr. 57.)
The People acknowledge that our analysis reflects the common understanding of the statute. However, they claim that the Legislature also intended the phrase "solicits another to commit" to describe "what it is that the defendant wants the other person to participate in and why the defendant is making a solicitation." Thus, the People argue that the phrase also means to solicit another person in order to commit one of the specified offenses. Accordingly, defendant violated the statute because he asked the victim to join in his commission of a lewd act, that is, he solicited her in order for him to violate section 288. We are not persuaded.
*236 Although the People propose this interpretation of the statute in the context of a solicitation to commit lewd conduct with a minor, it has broader implications. In particular, by inserting the words in order, albeit elliptically, the People give the phrase "solicits another person to commit" a meaning that is novel and materially different from the common understanding of criminal solicitation. Under this alternative interpretation, the solicitee need not be asked to commit or join in committing a crime or even engage in unlawful conduct. For example, if X intends to forcibly rape Y and solicits Z for a ride to Ts house, X has violated the statute: X has asked Z to do a particular thing in order for X to commit one of the specified offenses. Indeed, it would not even be necessary for X to disclose his purpose to Z. The People cite no case in which such conduct has led to a conviction for solicitation. Moreover, according to the People, section 653f, subdivision (c) conveys this novel meaning in addition to the plain meaning of its language. Thus, the statute would read, "solicits another to commit or in order to commit one of the specified offenses." We do not find the statutory language reasonably susceptible to such a reading.
As noted, we look to the words of the statute to discern the legislative intent. In our view, the single phrase "solicits another to commit" does not simultaneously describe two alternative forms of solicitation with different, indeed inconsistent, elementsi.e., one requires that the solicitee be asked to violate the law, and the other does not; one requires that the solicitor intend personally to commit the target offense, and the other does not.
As a general rule, we assume that when the Legislature enacts a statute, it is aware of related laws and intends to maintain a consistent body of rules. Thus, we will not presume an intent to overthrow long-established principles unless such intention is clearly expressed or necessarily implied. (See People v. Superior Court (Zamudio), supra, 23 Cal.4th at p. 199, 96 Cal.Rptr.2d 463, 999 P.2d 686; Theodor v. Superior Court (1972) 8 Cal.3d 77, 92, 104 Cal.Rptr. 226, 501 P.2d 234.) Although the People's proposed alternative form of solicitation does not overthrow the traditional view of solicitation, it does represent an unprecedented expansion, which would cover conduct that previously has not been considered a violation of the statute. In our view, if the Legislature had intended to establish a new and additional form of solicitation, it would have done so clearly, expressly, and unambiguously; it would not have employed the single phrase "solicits another to commit," which, given its plain meaning, would tend to obscure its intent to expand the concept of solicitation.
In this regard, we observe that where the Legislature has established alternative ways of violating a solicitation statute, it has done so by expressly articulating those alternatives. For example, section 647, subdivision (a), which proscribes lewd public conduct, applies to "[e]very person" "[w]ho solicits anyone to engage in or who engages in lewd or dissolute conduct...." (Italics added.) Section 647, subdivision (b), which proscribes disorderly conduct involving prostitution, applies to "(e]very person" "[w]ho solicits or who agrees to engage in or who engages in any act of prostitution...." (Italics added.) Business and Professions Code section 6152, subdivision (a)(2) provides that it is unlawful for "[a]ny person to solicit another person to commit or join in the commission of a violation of subdivision (a) [which proscribes capping]." (Italics added.)
Even if the statutory language could reasonably convey a novel and additional meaning, the statute would be ambiguous concerning whether the Legislature intended *237 to do so. Such novelty and ambiguity would raise serious constitutional questions with respect to whether the statute provides reasonable notice concerning the proscribed conduct. (See United States v. National Dairy Corp. (1963) 372 U.S. 29, 32-33, 83 S.Ct. 594, 9 L.Ed.2d 561; People v. Superior Court (Caswell) (1988) 46 Cal.3d 381, 389, 250 Cal.Rptr. 515, 758 P.2d 1046; Burg v. Municipal Court (1983) 35 Cal.3d 257, 269, 198 Cal.Rptr. 145, 673 P.2d 732.) As a rule, courts avoid instructions that raise serious constitutional questions. (See People v. Anderson (1987) 43 Cal.3d 1104, 1139, 240 Cal.Rptr. 585, 742 P.2d 1306.) Moreover, as noted above, we ordinarily resolve an ambiguous penal statute in favor of the defendant, unless doing so is unreasonable or leads to absurd results. Here limiting the scope of section 653f, subdivision (e) to the plain meaning of its language is more beneficial to defendant than expanding it, and we cannot say that limiting it leads to an unreasonable or absurd result.
It is also a settled rule of construction that courts must not add language to a statute under the guise of construction to accomplish a purpose that does not appear on the face of the statute or from its legislative history. (People v. Morris (1988) 46 Cal.3d 1, 15, 249 Cal.Rptr. 119, 756 P.2d 843, disapproved on other grounds in In re Sassounian (1995) 9 Cal.4th 535, 543-544, fn. 5, 37 Cal.Rptr.2d 446, 887 P.2d 527; Bank of America v. Salinas Nissan, Inc. (1989) 207 Cal.App.3d 260, 270, 254 Cal.Rptr. 748; see Code Civ. Proc. §§ 1858 & 1859.) The People present no extrinsic evidence of legislative intent to establish a novel, additional form of solicitation. Nor do they cite a case involving a conviction for solicitation where the solicitee was not asked to violate the law in some way. Rather, the People argue that we must adopt their reading of the statute to effectuate its purpose. Quoting Benson v. Superior Court, supra, 57 Cal.2d at p. 244, 18 Cal.Rptr. 516, 368 P.2d 116, the People assert that the statute is intended to protect people from being induced to "`join in the commission of the crimes specified.'" They submit that we must protect minors from being asked to "join" in the commission of lewd acts by others because "the Legislature did not intend to leave solicited child targets unprotected."
The People's reliance on Benson is misplaced. There, an undercover investigator posing as a pregnant woman asked the defendant how she might go about putting the child up for adoption without first having to obtain her husband's consent. The defendant said he could help and ultimately asked another undercover investigator to give false testimony that would rebut the presumption that the husband was the child's father. (Benson v. Superior Court, supra, 57 Cal.2d at pp. 242-243, 18 Cal. Rptr. 516, 368 P.2d 116.) The defendant challenged his conviction for solicitation on the ground that there was no possibility the target crime could have been committed: the investigator was not pregnant, there would have been no adoption proceeding; and therefore, the other investigator would not have presented false testimony. (Ibid.) The court rejected this claim because the statute is "designed not only to prevent solicitations from resulting in the commission of the crimes solicited, but to protect `inhabitants of this state from being exposed to inducement to commit or join in the commission of the crimes specified....' [Citation.] `Purposeful solicitation presents dangers calling for preventive intervention and is sufficiently indicative of a disposition towards criminal activity to call for liability. Moreover, the fortuity that the person solicited does not agree to commit the incited crime plainly should not relieve the solicitor of liability *238 ....' [Citation.] The act solicited must, of course, be criminal. If the solicitor believes that the act can be committed `it is immaterial that the crime urged is not possible of fulfillment at the time when the words are spoken' or becomes impossible at a later time. [Citations.]" (Id. at p. 243, 18 Cal.Rptr. 516, 368 P.2d 116, italics added.)
The People rely on the italicized phrase. However, viewed in context, it means that the solicitee must be asked to join as a perpetrator in violating the law. It does not reasonably suggest that the crime may involve asking another person to perform noncriminal conduct. Indeed, in the passage quoted above, the court states that the solicited act must be criminal. We also reject any suggestion that a child "joins" in the commission of a violation of section 288. The child is the victim of the offense.
Last, we point out that section 288 is only one of the target offenses enumerated in the statute. The People's claim focuses only on protecting the "solicited child targets." They provide no evidence that the Legislature intended the phrase "solicits another to commit" to have a unique dual meaning with respect to only one of the enumerated offenses. Nor does the passage from Benson suggest that section 653f, subdivision (c) was designed to prevent child molesters from soliciting their victims. Moreover, the People do not explain how their interpretation of the statute might apply to the other target offenses. As noted, it could conceivably apply where one asks another person for a ride to a victim's house without stating that the purpose is to commit a forcible rape. We fail to see how this application of the statute advances its purpose as revealed in Benson.
In sum, offering a minor money for oral sex could support a conviction for annoying or molesting a minor in violation of section 647.6 or soliciting an act of prostitution in violation of section 647, subdivision (b). However, we hold that it does not constitute criminal solicitation in violation of section 653f, subdivision (c). Thus, defendant's conviction for that offense cannot stand.

IV. Constitutionality of Section 647.6

Defendant contends that his conviction under section 647.6 for annoying or molesting a minor must be reversed because that statute proscribes speech that is protected by the First Amendment and therefore is facially overbroad and unconstitutional.[5] We disagree.
The First Amendment to the Constitution of the United States provides, in relevant part, "Congress shall make no law ... abridging the freedom of speech...." It is designed "to preserve an uninhibited marketplace of ideas" and to repel efforts *239 to limit the "`uninhibited, robust and wideopen' debate on public issues." (Red Lion Broadcasting Co. v. FCC (1969) 395 U.S. 367, 386-390, 89 S.Ct. 1794, 23 L.Ed.2d 371; Gertz v. Robert Welch, Inc. (1974) 418 U.S. 323, 340, 94 S.Ct. 2997, 41 L.Ed.2d 789; see Roth v. U.S. (1957) 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 ["to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people"].)
"Although constitutional rights are generally said to be personal, a well established exception is found in the overbreadth doctrine associated with First Amendment jurisprudence. [Citation.] Under this doctrine, litigants may challenge a statute not because their own rights of free expression are violated, but because the very existence of an overbroad statute may cause others not before the court to refrain from constitutionally protected expression. [Citations.]" (In re M.S. (1995) 10 Cal.4th 698, 709-710, 42 Cal.Rptr.2d 355, 896 P.2d 1365; Broadrick v. Oklahoma (1973) 413 U.S. 601, 612, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830.)
In New York v. Ferber (1982) 458 U.S. 747, 769, 102 S.Ct. 3348, 73 L.Ed.2d 1113, the United States Supreme explained the scope of the First Amendment overbreadth doctrine. "[L]ike most exceptions to established principles, [the doctrine] must be carefully tied to the circumstances in which facial invalidation of a statute is truly warranted. Because of the widereaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, we have recognized that the overbreadth doctrine is `strong medicine' and have employed it with hesitation, and then `only as a last resort.' [Citation.] We have, in consequence, insisted that the overbreadth involved be `substantial' before the statute involved will be invalidated on its face. [¶] In Broadrick [v. Oklahoma, supra, 413 U.S. at p. 615, 93 S.Ct. 2908], we explained the basis for this requirement: [¶] `[T]he plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conducteven if expressivefalls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effectat best a prediction cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. [Citation.]' [Citation.] [¶] We accordingly held that `particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' [Citation.]" (New York v. Ferber, supra, 458 U.S. at p. 770, 102 S.Ct. 3348, italics added and fns. omitted, quoting Broadrick v. Oklahoma, supra, 413 U.S. at p. 604, 93 S.Ct. 2908.)
Initially, defendant asserts that because section 647.6 regulates "pure speech," he need not show that its overbreadth is real and substantial. We disagree. As we explain more fully below, section 647.6 does not proscribe only speech. (See, e.g., Gooding v. Wilson (1972) 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 [statute proscribed the use of "opprobrious words or abusive language, tending to cause a *240 breach of the peace"].) Rather, the statute proscribes annoying or molesting conduct, which, in a given case, may consist of only speech. Moreover, in Brockett v. Spokane Arcades, Inc. (1985) 472 U.S. 491, 502-504, and footnote 12, 105 S.Ct. 2794, 86 L.Ed.2d 394, the United States Supreme Court rejected the view that the substantial overbreadth requirement is inapplicable where pure speech rather than conduct is at issue. (See New York v. Ferber, supra, 458 U.S. at p. 772, 102 S.Ct. 3348.) Indeed, over 10 years earlier in Parker v. Levy (1974) 417 U.S. 733, 760, 94 S.Ct. 2547, 41 L.Ed.2d 439, the court reiterated its longstanding "reluctance to strike down a statute on its face where there were a substantial number of situations to which it might be validly applied. Thus, even if there are marginal applications in which a statute would infringe on First Amendment values, facial invalidation is inappropriate if the `remainder of the statute ... covers a whole range of easily identifiable and constitutionally prescribable ... conduct....' [Citation.]"
We now turn to the merits of defendant's claim. Section 647.6, subdivision (a) provides, "Every person who annoys or molests any child under the age of 18 shall be punished by a fine not exceeding one thousand dollars ($1,000), by imprisonment in a county jail not exceeding one year, or by both the fine and imprisonment."
The words annoy and molest are synonymous and mean to disturb or irritate, especially by continued or repeated acts; to vex; to trouble; to irk; or to offend. (People v. Carskaddon (1957) 49 Cal.2d 423, 426, 318 P.2d 4; People v. Thompson (1988) 206 Cal.App.3d 459, 463, 253 Cal.Rptr. 564.) To establish a violation of section 647.6, subdivision (a), the prosecution must prove that the defendant engaged in conduct toward a minor that (1) "a `"normal person would unhesitatingly be irritated by"' [citations]," and (2) was "`"motivated by an unnatural or abnormal sexual interest"' in the victim [citations]." (People v. Lopez (1998) 19 Cal.4th 282, 289, 79 Cal.Rptr.2d 195, 965 P.2d 713; In re Gladys R. (1970) 1 Cal.3d 855, 867, 83 Cal.Rptr. 671, 464 P.2d 127; see CALJIC No. 16.440 (2001 rev.).)[6]
Generally, section 647.6 has been applied to sexual acts toward minors. (See People v. Kongs (1994) 30 Cal.App.4th 1741, 1750, 37 Cal.Rptr.2d 327, and cases cited there.) However, as defendant correctly points out, the proscribed conduct may consist of words alone. (People v. La Fontaine (1978) 79 Cal.App.3d 176, 185, 144 Cal.Rptr. 729 overruled on other grounds in People v. Lopez, supra, 19 Cal.4th at p. 292, 79 Cal.Rptr.2d 195, 965 P.2d 713; see People v. Thompson, supra, 206 Cal.App.3d 459, 463, 253 Cal.Rptr. 564 [cruising by and whispering to the victim]; see also People v. Thompson (1959) 167 Cal.App.2d 727, 734, 335 P.2d 249 [actual touching not necessary].) Moreover, the words need not be explicitly lewd or obscene.
Defendant argues that the statute is facially overbroad because it could be applied to nonsexual forms of expression that lie at the core of First Amendment values. "For example, the statute would proscribe speech which criticized religion or even the *241 belief in Santa Claus. The statute would also proscribe partisan comments at a sporting event, since these comments could easily `disturb or irritate.'" We are not persuaded.
To determine whether the alleged overbreadth of section 647.6 is real and substantial, we first look to see whether its application to speech is contentbased or content-neutral. (See People v. Englebrecht (2001) 88 Cal.App.4th 1236, 1264, 106 Cal.Rptr.2d 738.) "`As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based.' [Citation.] A content-based regulation is presumably invalid. [Citation.] It may be upheld only upon a showing that it is necessary to serve a compelling state interest and has been narrowly tailored to serve that end. [Citation.] [¶] Conversely, `[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. [Citation.] Government regulation of expressive activity is content neutral so long as it is "justified without reference to the content of the regulated speech." [Citations.]' [Citation.] A content-neutral regulation is upheld if it is narrowly tailored to serve a significant government interest and leaves open ample alternative channels of communication. [Citation.] [¶] Thus, the principal inquiry in determining whether a law is content-based or content-neutral `is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. [Citation.] The government's purpose is the controlling consideration.' [Citation.]" (People v. Hsu (2000) 82 Cal.App.4th 976, 986, 99 Cal.Rptr.2d 184, original italics.)
For example, in Renton v. Playtime Theatres, Inc. (1986) 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29, the court upheld a zoning ordinance that barred adult movie theaters in residential neighborhoods because the purpose of the ordinance was to reduce crime and deteriorating property values. On the other hand, in Sebago, Inc. v. City of Alameda (1989) 211 Cal.App.3d 1372, 259 Cal.Rptr. 918, the court invalidated an ordinance restricting the location of vending machines for adult content publications because its purpose was to limit children's access to adulti.e., disfavoredmaterial. (Cf. R.A.V. v. St. Paul (1992) 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 [invalidating statute proscribing speech that might incite violence based on race, color, creed, or gender because the proscription was based on the disfavored content of inciting language].)
In Gormley v. Director, Connecticut State Dept. of Probation (2d Cir.1980) 632 F.2d 938, certiorari denied (1980) 449 U.S. 1023, 101 S.Ct. 591, 66 L.Ed.2d 485, the court rejected a facial overbreadth challenge to Connecticut's telephone harassment statute, which provides, in relevant part, "`A person is guilty of harassment when ... (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm.'" (Gormley v. Director, Connecticut State Dept. of Probation, supra, 632 F.2d at p. 940, fn. 1, quoting Conn.Gen.Stat. §§ 53a 183(a)(3).) The court explained that the statute did not require any speech: A harassing call with heavy breathing or other noise or even silence would violate the statute. The court noted that insofar as it reached speech, the purpose of the statute was not related to the suppression of any particular message. "`[A] recital on the telephone of the most sublime prayer with the intention and effect of harassing the listener would fall within its ban as readily as *242 the most scurrilous epithet.' Indeed, by its express terms the statute may be violated where no conversation at all occurs." (Id. at p. 942.) Rather, the statute was designed to protect innocent individuals from fear, abuse or annoyance at the hands of persons who employed the telephone, not to communicate, but for other unjustifiable motives. Moreover, the court found that this purpose reflected a compelling state interest. Last, the court pointed out that the statute requires not only that the call be made to harass, annoy, or alarm but also that it be made in a manner that was likely to do so. Under the circumstances, the court concluded that the alleged overbreadth of the statute was not real or substantial. "The possible chilling effect on free speech of the Connecticut statute strikes us as minor compared with the all-too-prevalent and widespread misuse of the telephone to hurt others. The risk that the statute will chill people from, or prosecute them for, the exercise of free speech is remote. The evil against which the statute is directed is both real and ugly." (Ibid.)
Like the telephone harassment statute in Gormley, section 647.6 does not regulate speech by reference to the meaning of the words expressed. Nor does it draw a distinction between favored and unfavored viewpoints. Moreover, since, as defendant notes, the statute could apply to any objectively annoying statements, its purpose is not the suppression of a particular message or idea. Rather, as the California Supreme Court explained in People v. Lopez, supra, 19 Cal.4th at p. 296, 79 Cal.Rptr.2d 195, 965 P.2d 713, the purpose of the statute is "to protect children from interference by sexual offenders." (Italics omitted; see People v. Thompson, supra, 167 Cal.App.2d at p. 733, 335 P.2d 249 [purpose of former 647a to protect minor from improper advances by sexual offenders]; People v. Pallares (1952) 246 P.2d 173, 112 Cal.App.2d Supp. 895, 900 [same].) Section 647.6 reflects a legislative finding that objectively annoying or disturbing conduct, including speech, directed toward children and motivated by an abnormal sexual interest is harmful to children, and those who engage in such conduct pose a threat. Unquestionably, the state has a compelling interest in protecting the health and welfare of children. (See FCC v. Pacifica Foundation (1978) 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073; Ginsberg v. New York (1968) 390 U.S. 629, 639, 88 S.Ct. 1274, 20 L.Ed.2d 195; American Academy of Pediatrics v. Lungren (1997) 16 Cal.4th 307, 342, 66 Cal.Rptr.2d 210, 940 P.2d 797; People v. Stritzinger (1983) 34 Cal.3d 505, 512, 194 Cal.Rptr. 431, 668 P.2d 738; Conley v. Roman Catholic Archbishop (2000) 85 Cal. App.4th 1126, 1131, 102 Cal.Rptr.2d 679.) Indeed, in New York v. Ferber, supra, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113, the court found it "evident beyond the need for elaboration that a State's interest in `safeguarding the physical and psychological well-being of a minor' is `compelling.' [Citation.]" (Id. at pp. 756-757, 102 S.Ct. 3348.) For this reason, the court in Ferber held that the states are entitled to greater leeway in regulating child pornography than is generally permitted and may proscribe depictions that do not meet the definition of obscenity. (Ibid.)
Furthermore, section 647.6 does not apply to all annoying or disturbing conduct toward children. As judicially construed, the statute proscribes only that conduct, including speech, which is motivated by an abnormal sexual interest. This element of motivation, which taints the speaker's disturbing conduct, limits the scope of the statute, and leaves unfettered speech that may be annoying or disturbing to children but that is not perversely motivated.
*243 Given our discussion, we find that section 647.6 is content-neutral and narrowly tailored to serve the state's compelling interest in protecting children from sexual offenders. Moreover, it leaves open ample alternative channels for people to express themselves via annoying or disturbing conduct.
Last, we believe that the statute's limited application to speech has no appreciable negative impact on the marketplace of ideas, the robustness of public debate, and the freedom to express opinions and points of view.
In Chaplinsky v. New Hampshire (1942) 315 U.S. 568, 571-572, 62 S.Ct. 766, 86 L.Ed. 1031, the United States Supreme Court explained that "[t]here are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene.... It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." (Fn.omitted.) Accordingly, the court in Miller v. California (1973) 413 U.S. 15, 18-19, 93 S.Ct. 2607, 37 L.Ed.2d 419, concluded that "the States have a legitimate interest in prohibiting dissemination or exhibition of obscene material when the mode of dissemination carries with it a significant danger of offending the sensibilities of unwilling recipients or of exposure to juveniles." (Fn.omitted.) (See Roth v. United States, supra, 354 U.S. at p. 485, 77 S.Ct. 1304 ["obscenity is not within the area of constitutionally protected speech or press"].)
In In re M.S, supra, 10 Cal.4th at p. 710, 42 Cal.Rptr.2d 355, 896 P.2d 1365, the court addressed a facial overbreadth challenge to section 422.6, a "hate crime" statute, which proscribes certain types of threats. The court explained that "In this context, the goal of the First Amendment is to protect expression that engages in some fashion in public dialogue, that is, '"communication in which the participants seek to persuade, or are persuaded; communication which is about changing or maintaining beliefs, or taking or refusing to take action on the basis of one's beliefs ...."` [Citations.] As speech strays further from the values of persuasion, dialogue and free exchange of ideas, and moves toward willful threats to perform illegal acts, the state has greater latitude to regulate expression. [Citation.] Nonetheless, statutes criminalizing threats must be narrowly directed against only those threats that truly pose a danger to society. [Citation.]"
The court distinguished threats from fighting words and incitement, which are not entitled to First Amendment protection. "Both fighting words and incitement have expressive value, the former as provocative communication of a most effective sort, the latter as communication aimed at moving the listener to act. The First Amendment protects the inherent communicative value in each of the two kinds of expression up to the point at which the state's compelling interest in maintaining order must outweigh the speaker's freedom of expression. This is the purpose served by the rule in Brandenburg [v. Ohio (1969)] 395 U.S. [444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430] ... that to forfeit constitutional protection the speech must be `directed to inciting ... imminent lawless action' and must be likely to do so, and the corresponding rule of Chaplinsky [v. New Hampshire], supra, 315 U.S. at page 572 [62 S.Ct. 766], that fighting words lose First Amendment protection only when ... by their very utterance, *244 they `inflict injury or tend to incite an immediate breach of the peace.'" Nevertheless, the court concluded that threats of violence also fall outside First Amendment protection "because they coerce by unlawful conduct, rather than persuade by expression, and thus play no part in the 'marketplace of ideas.' As such, they are punishable because of the state's interest in protecting individuals from the fear of violence, the disruption fear engenders and the possibility the threatened violence will occur." (In re M.S., supra, 10 Cal.4th at p. 714, 42 Cal.Rptr.2d 355, 896 P.2d 1365, original italics.)
Here, can it be said that speech covered by the statute is more essential to the exposition of ideas than obscenity, fighting words, incitements, or threats? Do perversely motivated and objectively annoying comments to children possess more social value as a step toward truth? We think not. However, even assuming such annoying comments have some arguable expressive social value, can it be said that their value outweighs the state's interest in protecting children from sexual offenders? Is that harm less significant than the harm posed by obscene material, fighting words, incitements to riot, or coercive threats? Again, we do not think so. In our view, the state's compelling interest in protecting children outweighs any arguable social value and expressive potential in perversely motivated and disturbing comments toward children.
Defendant's fear that the statute would inhibit public criticism of religion, Santa Claus, or the San Jose Sharks is unfounded. The statute does not reach such criticism if it is not motivated by an abnormal sexual interest. As noted, this leaves ample room for such critical expression.
In sum, we do not find the alleged overbreadth of section 647.6 to be real or substantial when judged in relation to the statute's plainly legitimate sweep. (New York v. Ferber, supra, 458 U.S. at p. 770, 102 S.Ct. 3348; cf. People v. Borrelli (2000) 77 Cal.App.4th 703, 91 Cal.Rptr.2d 851, [rejecting facial overbreadth challenge to section 646.9].) Thus, "whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which [the statute's] sanctions, assertedly, may not be applied." (Broadrick v. Oklahoma, supra, 413 U.S. at pp. 615-616, 93 S.Ct. 2908.)

V. Admission of Prior Molestation Convictions

Defendant contends the trial court erred in admitting evidence of two 1989 convictions for child molestation under Evidence Code section 1108 to prove the current charge under section 647.6. He claims section 1108 violates his constitutional right to due process. Alternatively, he claims the court abused its discretion in admitting the evidence because its potential prejudice substantially outweighed any probative value.

A. Constitutionality

Under Evidence Code section 1108, evidence of a prior sexual offense is admissible in a prosecution for another sexual offense to prove a propensity to commit such crimes.[7] Defendant claims this statute *245 violates due process because it jeopardizes the presumption of innocence and impermissibly lightens the prosecution's burden to prove guilt beyond a reasonable doubt.
As defendant acknowledges, the California Supreme Court in People v. Falsetta (1999) 21 Cal.4th 903, 89 Cal.Rptr.2d 847, 986 P.2d 182 rejected this claim and upheld the constitutionality of the statute. (Id, at pp. 907-908, 910-922, 89 Cal. Rptr.2d 847, 986 P.2d 182; see People v. Waples (2000) 79 Cal.App.4th 1389, 1394, 95 Cal.Rptr.2d 45.) As defendant further acknowledges, we are bound by the holding in Falsetta. (See Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.)

B. Abuse of Discretion

The admission of prior sexual offenses under Evidence Code section 1108 is limited by Evidence Code section 352.[8] "Under Evidence Code section 352, the trial court has discretion to exclude evidence `... if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' The trial court's exercise of discretion in admitting evidence under Evidence Code section 352 will not be disturbed unless the court acted in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]" (People v. Yovanov (1999) 69 Cal.App.4th 392, 406, 81 Cal. Rptr.2d 586; see People v. Rodriguez (1999) 20 Cal.4th 1, 9-10, 82 Cal.Rptr.2d 413, 971 P.2d 618.)
"The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging."` [Citation.]" (People v. Karis (1988) 46 Cal.3d 612, 638, 250 Cal.Rptr. 659, 758 P.2d 1189; accord: People v. Padilla (1995) 11 Cal.4th 891, 925, 47 Cal.Rptr.2d 426, 906 P.2d 388, overruled on another point in People v. Hill (1998) 17 Cal.4th 800, 823, fn. 1, 72 Cal.Rptr.2d 656, 952 P.2d 673.)
In People v. Falsetto, supra, 21 Cal.4th at p. 917, 89 Cal.Rptr.2d 847, 986 P.2d 182, the court explained that in weighing probative value against prejudicial effect, the court "must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all *246 of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense."
In ruling on the admissibility of the prior convictions, the trial court found that they were relevant because they involved the same type of conduct against victims of similar ages and gender. The court also found that they were not too remote given defendant's incarceration during much of the intervening time. The court further noted that because the priors would come in via documentary evidence rather than live testimony, there was little risk of confusing or distracting the jury. Ultimately, the court found that the basic fact of defendant's sexual offenses would not be unduly or unfairly prejudicial, and any prejudice was outweighed by the probative value of the evidence.
We note that the court agreed to redact the documentary evidence to eliminate the details of the prior offenses. Moreover, the evidence was admitted at the close of the prosecution's case, and the defense rested without presenting any evidence. Thereafter, the court instructed the jury, and in doing so stated the evidence of defendant's convictions was admitted only for the purpose of proving the alleged violation of section 647.6 and must not be considered for any other purpose or charge.
Defendant claims the documentary evidence was confusing and therefore inadmissible because the jury could not know how to consider it for only one count. Indeed, he notes that during closing argument the prosecutor made a comment about the prior convictions, to which defense counsel objected. The court agreed that the comment seemed directed at the solicitation count, for which the prior convictions were not admitted.[9] Defendant also argues that the only disputed issue concerning section 647.6 charge was whether defendant's words were objectively annoying or disturbing. We find no merit to these arguments.
The prosecutor's comment during closing argument does not suggest that the jurors would later be confused as to how they could use the evidence. As noted, the court expressly limited the evidence to the violation of section 647.6. As to that charge, the jurors were instructed that the prosecution had to prove that defendant annoyed or molested the victim and that in doing so he was motivated by "an unnatural or abnormal sexual interest in ... the alleged child victim." Clearly, the prior crimes were highly relevant to prove defendant's motivation, regardless of whether defendant's statements unmistakably revealed his sexual interest. (See People v. Balcom (1994) 7 Cal.4th 414, 422, 27 Cal.Rptr.2d 666, 867 P.2d 777 [not guilty puts all elements of the offense in issue].) We doubt that reasonable jurors would have any difficulty in figuring this out. Nor does the record suggest that jurors were unable to follow the court's admonition, to limit the evidence to one charged offense. (See People v. Mickey (1991) 54 Cal.3d 612, 689, fn. 17, 286 Cal.Rptr. 801, 818 P.2d 84.)

*247 VI. CALJIC No. 17.41.1

Defendant contends the court committed reversible error in giving CALJIC No. 17.41.1. As given, this instruction advised the jury as follows: "The integrity of the trial requires that jurors at all times during their deliberations conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law, or to decide the case based on penalty or punishment, or any other improper basis, it is the obligation of the other jurors to immediately advise the court of the situation."
Defendant claims the instruction infringed his constitutional rights to a fair trial and due process of law in that the instruction constitutes an impermissible anti-nullification instruction and improperly chills the free exchange of ideas among jurors. We disagree.
Issues concerning the propriety of the instruction are currently pending before our state Supreme Court. (People v. Taylor (2000) 80 Cal.App.4th 804, 95 Cal. Rptr.2d 357, rev. granted Aug. 23, 2000 (S088909); People v. Morgan (2000) 85 Cal.App.4th 34, 101 Cal.Rptr.2d 829, rev. granted Mar. 14, 2001 (S094101); People v. Phillips (2001) 89 Cal.App.4th 61, 107 Cal. Rptr.2d 84, rev. granted Sept. 12, 2001 (S099017), further action in these cases deferred pending disposition in People v. Engelman (2000) 77 Cal.App.4th 1297, 92 Cal.Rptr.2d 416, rev. granted Apr. 26, 2000 (S086462).)
Even assuming that CALJIC No. 17.41.1 is erroneous, we do not believe the error would compel reversal. The record reveals that the jurors reached a unanimous verdict in less than two hours, and when polled, each juror affirmed the verdict. During their deliberations they did not request a readback of any testimony or ask the court any questions. And there is no evidence that any juror reported or threatened to report another juror for misconduct. Under the circumstances, we are confident that any error in giving the instruction was harmless beyond a reasonable doubt. (See Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; e.g., People v. Molina (2000) 82 Cal.App.4th 1329, 1335, 98 Cal.Rptr.2d 869.)

VII. Disposition

The judgment is modified to strike the conviction for count 1 (§ 653f, subd. (c)) and to vacate the stay on count 2 (§ 647.6). The judgment is further modified to reflect that (1) presentence custody credit previously awarded against the sentence on count 1 shall now apply against the sentence for count 2; and (2) any credit earned by defendant serving the term imposed on count 1 shall be applicable to the sentence imposed on count 2. As modified the judgment is affirmed. The Clerk of the Santa Clara County Superior Court is directed to amend the abstract of judgment in accordance with our modifications and forward a copy to the Department of Corrections.
WE CONCUR: BAMATTRE-MANOUKIAN, Acting P.J., and O'FARRELL, J.[*]
NOTES
[1] All further statutory references are to the Penal Code unless otherwise specified.
[2] Section 288 proscribes lewd acts with a minor. Oral copulation with a minor constitutes a lewd act (§ 288, subd. (c)(1); People v. Murphy (2001) 25 Cal.4th 136, 141-149, 105 Cal.Rptr.2d 387, 19P.3d 1129.)
[3] Section 27 provides, in relevant part, "(a) The following persons are liable to punishment under the laws of this state: [¶] (1) All persons who commit, in whole or in part, any crime within this state." (Italics added.)
[4] Section 5.02 of the Model Penal Code provides, in relevant part, "(1) Definition of Solicitation. A person is guilty of solicitation to commit a crime if with the purpose of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission." (Model Pen.Code, § 5.02(1), p. 500.)
[5] Defendant does not argue that the statute is unconstitutional as applied to his conduct. Nor could he. His particular statements to the victimoffering her money for oral sex solicited an act of prostitution. Such speech is unlawful (§ 647, subd. (b)), and proscriptions against it are permissible under the First Amendment. (See Goldin v. Public Utilities Commission (1979) 23 Cal.3d 638, 153 Cal. Rptr. 802, 592 P.2d 289 [regulation on use of phones to solicit acts of prostitution]; see also Giboney v. Empire Storage & Ice Co. (1949) 336 U.S. 490, 498, 69 S.Ct. 684, 93 L.Ed. 834 ["It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute."]; cf. Pittsburgh Press Co. v. Human Rel. Comm'n (1973) 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 [upholding restrictions on advertising illegal commercial activity].) Thus, whether defendant's statements are characterized as an illegal solicitation or as annoying or molesting a child, proscribing them did not interfere with his First Amendment rights.
[6] We reject defendant's assertion that "the sexual motivation element is not part of the statute itself...." Although this is literally true, the statute has been construed to include such a requirement. Thus, in In re Gladys R., supra, 1 Cal.3d at p. 867, 83 Cal.Rptr. 671, 464 P.2d 127, the court held that the statute applies "only to offenders who are motivated by an unnatural or abnormal sexual interest or intent." (Italics added; accord, People v. Lopez, supra, 19 Cal.4th at p. 289, 79 Cal. Rptr.2d 195, 965 P.2d 713; People v. Maurer (1995) 32 Cal.App.4th 1121, 1126, 38 Cal. Rptr. 2d 335.)
[7] Evidence Code section 1108, subdivision (a) provides, "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Evidence Code section 1101, subdivision (a) prohibits the use of prior instances of misconduct to prove a character trait or propensity to commit such an offense. However, Evidence Code section 1101, subdivision (b) permits the use of such evidence when relevant to prove a material issue such as motive. intent, opportunity, identity, common plan or scheme.
[8] Evidence Code section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."
[9] The prosecutor stated, "You are not being told or encouraged to convict him simply because he did this in the past. It is separate. You are being asked to convict him for what he did to [the victim] for his asking, for his annoying her. [¶] Why are you told about these things? I have to show you this was not a mistake, this was not a joke, he had specific intent. Specific intent is hard to prove. Do you ever really know what's going on in someone's mind? Sometimes you have to know. You have to look at the context and circumstances, [¶] You want a lot of information. This is some of that information."

Defense counsel objected because section 647.6 does not require specific intent whereas section 653f does.
[*] Judge of the Monterey Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.